IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LUCAS LORENZO BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 124-021 |
| | ) | |
| MARTIN J. O'MALLEY, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff protectively applied for DIB and SSI on September 23, 2020,[1] and he alleged a disability onset date of January 1, 2019. Tr. ("R."), pp. 19, 333, 335. Plaintiff was 38 years old

---

[1] Although Plaintiff referred to October 14, 2020, as the operative application date, Pl.'s Br., p. 1; see also R. 335, the ALJ and Commissioner referred to the protective filing date of September 23, 2020, as the application date. See R. 19, 331; Comm'r's Br., p. 2. The Court adopts the protective filing date of

on September 23, 2020, and was 41 years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 30-31, 45. Plaintiff's alleged disability is a neck/back injury. R. 430. Plaintiff reported completing his GED, R. 430-31, and prior to his alleged disability date, accrued a history of past work that includes employment as a laborer for a manufacturing company and a construction worker, R. 431.

The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. R. 91-145. Plaintiff requested a hearing before an ALJ, R. 190, and ALJ Walter Herin held a hearing on April 10, 2023, R. 37. Represented by counsel, Plaintiff appeared by teleconference and testified, as did Plaintiff's mother, Justine Bradley Stewart, and a vocational expert ("VE"), Jason Purinton. R. 37-88. On June 26, 2023, the ALJ issued a decision finding Plaintiff not disabled. R. 16-31.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity (SGA) since January 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairments: cervical spine disorder with radiculopathy; arthralgias; and recurrent headaches (20 CFR 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, undersigned finds the claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that the claimant

---

September 23, 2020, as the application date in this Report and Recommendation for consistency with the ALJ's decision. See R. 331.

>   can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, can stand and walk an aggregate of up to 2 hours and can sit at least 6 hours of an 8-hour workday; can no more than occasionally stoop, balance, crouch, kneel and climb stairs or ramps, but cannot crawl or climb ladders, ropes, or scaffolds. He cannot perform tasks that require reaching overhead with the bilateral upper extremities. He should have no required exposure to a high ambient noise environment louder than a moderate noise level such as a standard office environment. He should have no required exposure to unprotected heights or dangerous machinery.
>
>   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
>   The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2019 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 19-33.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting an immediate award of benefits, and in the alternative, remand, arguing the RFC is not supported by substantial evidence and the hypothetical questions posed to the VE failed to include all Plaintiff's limitations and impairments. (See doc. no. 10, "Pl.'s Br."; doc. no. 14) The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13, "Comm'r's Br.")

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether

3

the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct

legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

Plaintiff argues the ALJ and Appeals Council did not properly assess Plaintiff's RFC and the ALJ failed to include all of Plaintiff's limitations in the hypothetical questions posed to the VE. (Pl.'s Br., pp. 1, 8-15.) The ALJ found Plaintiff had the RFC to perform sedentary work but imposed several limitations to account for Plaintiff's physical impairments, including Plaintiff "cannot perform tasks that require reaching overhead with the bilateral upper extremities." R. 25. Plaintiff believes this RFC is not supported by substantial evidence because the ALJ ignored "unrefuted credible medical tests, medical opinions, medical evaluations and other related information that supported Plaintiff's claim of disability." (Pl.'s Br., p. 8.) Specifically, Plaintiff argues the ALJ failed to consider Plaintiff's "numbness and weakness in his hands" based on findings in Plaintiff's functional capacities evaluation ("FCE") and Dr. Reginald Brown's medical examination of Plaintiff. (Id. at 8-9.) Plaintiff also argues the ALJ failed to include all Plaintiff's impairments, particularly the weakness and numbness in Plaintiff's hands and fingers, in the hypothetical question posed to the VE, which the ALJ then relied on to find Plaintiff not disabled. (Id. at 12-15.) The Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

### A.   Formulating Plaintiff's RFC

#### 1.   Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined

5

in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

### 2. Plaintiff's RFC is Supported by Substantial Evidence

Plaintiff argues the ALJ erred when formulating the RFC by improperly discounting Plaintiff's complaints of "numbness and weakness" in his fingers and hands. RFC "is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012) (*per curiam*); Nichols v. Kijakazi, No. 320-CV-224, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of [the doctor's] limitations into the RFC."). Indeed, per the regulations, the ALJ cannot defer or

6

give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 416.920c(a). Instead, the ALJ is to examine the persuasiveness of medical opinions and formulate an RFC that is supported by substantial evidence.

Plaintiff asserts he "definitely had numbness and weakness in his hands," and the ALJ erred by only limiting Plaintiff to "no bilateral overhead reaching" and giving little or no credibility to findings in (1) a 2019 Functional Capacities Evaluation completed in connection with Plaintiff's worker's compensation claim[2] and (2) a 2022 medical examination by consultative examiner Dr. Reginald Brown. (Id. at 8-10.) The Court disagrees for the reasons explained below.

The ALJ's analysis of the FCE provides as follows:

The claimant completed a comprehensive Functional Capacities Evaluation on February 21, 2019. The claimant was cooperative throughout the testing, and pain behaviors were present during testing. He was limited due to reports of pain that occasionally interfered with the testing procedures. The claimant tested with the right hand at 6.5%, which was in the acceptable range for consistent effort, and in the left hand 7.8% that indicated consistent effort. The claimant was noted to be able to sit for 18 minutes, stand for 15 minutes, and walk for 1.13 minutes, all in a 12 hour day, and noted to be at "occasional job duty level." He could never lift any weight from the floor to waist or mid-thigh to waist, and waist to chest 5 pounds constantly, 7 pounds frequently, and 10 pounds occasionally. He could never bend, stoop, squat, crouch, kneel, or reach overhead and occasionally climb stairs (Exhibit B7F). I find these opinions are unpersuasive overall, as they are inconsistent with the totality of the record overall. In particular, these conclusions are inconsistent with the consultative examination of Dr. Brown discussed below. These conclusions appear to be based primarily upon the claimant's subjective complaints. I note that FCE was conducted in February 2019, approximately 5 months after the alleged injury. Those opinions are also inconsistent with and unsupported by the medical evidence of record, which shows minimal treatment during the last three-four years, and the total absence of any prescribed medication for his alleged pain. I note the claimant explained that he could not afford medical treatment because

---

[2] On or about September 30, 2018, Plaintiff sustained injuries to his head, neck, and back in the course of his employment. R. 360. He reported being hit in the head with a steel door. R. 817, 845. His worker's compensation case was settled on May 20, 2019. R. 342.

> he does not have insurance. I find that explanation insufficient, as he also testified he settled a workers compensation claim for his alleged work-related injury for a net sum of approximately $50,000, which included anticipated cost of additional medical treatment after the date of the settlement. I also note he has not presented to any of the indigent care or free medical clinics in the Augusta, Georgia area, and has only presented to an emergency room on rare, isolated occasions.

R. 26-27.

Plaintiff's argument the ALJ erred in failing to adopt the FCE findings regarding hand weakness and numbness fails out of the gate because, as Defendant points out, occupational therapists are not acceptable medical sources. See 20 CFR § 404.1502(a); see also Ewing v. Soc. Sec. Admin., Comm'r, No. 2:22-CV-759, 2024 WL 1366830, at *20-21 (N.D. Ala. Mar. 29, 2024) ("In the revised regulations, the SSA did not include occupational or physical therapists in the list of acceptable medical sources."). There can be no error in failing to adopt the findings of a medical source that is not acceptable under current regulations.

In addition, even if the Court could find error in the ALJ's consideration of the FCE, there is no basis for doing so. As the ALJ acknowledged, the FCE findings do suggest some level of hand weakness. R. 27. However, the ALJ explained he found the FCE unpersuasive overall because it was inconsistent with Dr. Brown's exam, primarily based on Plaintiff's subjective complaints, conducted only five months after Plaintiff's workplace accident, inconsistent with Plaintiff's minimal treatment history following his injury, and inconsistent with the "total absence" of prescribed pain medication. R. 27. Accordingly, the ALJ provided sufficient justification for his conclusions regarding the FCE and did not erroneously discount the FCE.

The ALJ's analysis of Dr. Brown's examination and findings is as follows:

> The neck had full range of motion (ROM), though pain was elicited. There was

> tenderness to blunt palpation along the cervical spine and paraspinal muscle tenderness, though the claimant had full ROM of the spine.  There was no extremity edema, and peripheral pulses were normal.  The claimant had full ROM involving both wrists, elbows, and shoulders, with complaint of pain elicited at both shoulders.
>
> . . .
>
> On neurologic exam, the claimant was fully oriented, could follow both simple and complex commands, and motor function was 4/5 in both upper extremities and 5/5 in the lower extremities.  There was no muscle atrophy and straight leg raise was performed to 90 degrees with referred pain to the neck on the right side only.  There was no pain with straight leg raise on the left.  Sensory was intact to fine filament except the fingers of both hands were numb.  Inconsistent with the claimant's testimony, however, the claimant was also noted to be able to perform activities of daily living including fastening/unfastening clothes, tying shoes, grooming, himself, and feeding himself.  Dr. Brown concluded that the claimant "does show evidence of cervical neuropathy with numbness involving the fingers of both hands, painful neck motion and a positive straight leg raise that causes increased pain in the neck area.  This claimant should avoid activities that call for excessive use of his neck/spine because of concerns for disc herniation at the cervical spine level. The claimant is only suitable for light duty or sedentary work.  Dr. Brown supported these conclusions through interview, objective examination, medical record review, and noting a prior cervical MRI that showed an annular bulge at C3-4.  (Exhibit B8F).  These opinions are found somewhat persuasive overall, as they are consistent with Dr. Brown's objective examination findings and with the totality of the record as a whole.  The residual functional capacity above limits the claimant to a reduced range of sedentary work based largely upon these findings and opinions.  However, I do not find it fully persuasive, given the lack of treatment in the last few years and the total absence of prescription medication for pain.  I note that in addition to limiting the claimant to sedentary exertion, the residual functional capacity precludes performing tasks that require reaching overhead with the bilateral upper extremities, which also accounts for findings such as reduced 4/5 strength in the upper extremities.

R. 27.

The ALJ deemed Dr. Brown's findings "somewhat persuasive overall."  R. 27.  Although Dr. Brown stated Plaintiff suffered from finger numbness in both hands, Dr. Brown also found Plaintiff could perform activities of daily living like dressing himself, grooming himself, and feeding himself.  R. 27, 691.  Dr. Brown's examination further revealed Plaintiff

9

had a full range of movement in his wrists and elbows. R. 27, 690-91. Additionally, and contrary to Plaintiff's assertions about significant limitations in his upper extremities, Dr. Brown rated Plaintiff's grip strength, pinch strength, and bilateral upper extremity strength each at 4/5, which the examination report defined as "mild weakness (movement against resistance)." R. 694. To account for this finding of "mild weakness" in Plaintiff's upper extremities in the RFC, the ALJ reasonably limited Plaintiff to no overhead bilateral reaching. R. 26-27. Thus, Dr. Brown's exam itself supports Plaintiff's RFC by illustrating Plaintiff has only minimal weakness in his upper extremities and maintains the ability to perform everyday activities himself.

Moreover, beyond the FCE and Dr. Brown's examination, other record evidence belies any need for more restrictive limitations in Plaintiff's RFC to address hand numbness and weakness. First, as detailed by the ALJ, "[x]-rays of [Plaintiff's] cervical and lumbar spine in July 2022 were overall unremarkable." R. 28, 696-702. Additionally, in direct contradiction to Plaintiff's argument he "definitely had numbness . . . in his hands," (Pl.'s Br. at 9), Plaintiff "denied any numbness or tingling in the upper . . . extremities" at his March 2023 emergency room visit, R. 29, 873.

Furthermore, following his workplace accident in 2018, Plaintiff went several years without seeking medical treatment of any kind. R. 29. In March 2023, Plaintiff visited the emergency room after being struck by a vehicle, thus marking Plaintiff's "first documented treatment since 2019." R. 29. The ALJ pointed to this prolonged period of no medical care as showing "[Plaintiff's] symptoms were not as bothersome as he has otherwise testified." R. 29. Indeed, the ALJ reasoned this lack of treatment "suggests that mere conservative treatment with over the counter analgesics was effective in controlling Plaintiff's symptoms since 2019." R. 29.

10

The ALJ also referenced Plaintiff's lack of treatment throughout his decision as a reason to discredit the FCE and Dr. Brown's examination. R. 27. Plaintiff contended he could not afford medical care, which the ALJ rejected because (1) Plaintiff obtained a workers' compensation settlement that included anticipated costs of future medical care; (2) there was no record of Plaintiff seeking indigent medical care; and (3) Plaintiff only visited emergency rooms "on rare, isolated occasions." R. 27.

Lastly, to further underscore the Court's conclusion the RFC is supported by substantial evidence, the Court turns to Plaintiff's hearing testimony to illustrate that the ALJ appropriately discredited Plaintiff's subjective complaints about his condition. Specifically, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with or supported by the medical evidence and other evidence in the record." R. 26. At the hearing, Plaintiff testified to needing his mother's assistance in practically all areas of his life. R. 49-51. Plaintiff stated he required help bathing, dressing, using the bathroom, and preparing food. R. 49-50. He further claimed "difficulty sitting, standing, [and] doing almost anything," and he "[doesn't] know how to lay down." R. 61. He described feeling "numbness and tingling" and "a lot of pain." R. 63.

Following Plaintiff's extensive testimony about his condition, the ALJ addressed the inconsistencies between Plaintiff's hearing testimony and the March 2023 emergency room records. R. 66. Most relevant here, Plaintiff testified to suffering from constant hand numbness, yet the emergency room records revealed Plaintiff denied numbness in his upper extremities during his visit. R. 66. Furthermore, Plaintiff testified he visited the emergency room because he fell out of bed, and he attributed the fall to his inability to feel the mattress underneath his body. R. 58. However, the emergency room records state Plaintiff was "injured in [a] collision with [a] car."

R. 870.  When the ALJ pointed out this discrepancy, Plaintiff denied being hit by a car.  R. 66-67.  Consistent with the emergency room records, Plaintiff's own mother testified Plaintiff visited the emergency room because he was hit by a car while standing or walking in the street rather than falling out of bed.  R. 71.  This not only contradicted Plaintiff's testimony about the cause of his emergency room visit, but also his testimony he spends "none" of the day on his feet or sitting down.  R. 60.

These material discrepancies obviously cast doubt on the legitimacy of Plaintiff's subjective complaints.  The ALJ described Plaintiff's answers about the emergency room visit as "most unusual" and "a real problem," noting his role requires "assess[ing] the supportability and the consistency of the [Plaintiff's] testimony with the medical records."  R. 67, 68.  Accordingly, the inconsistencies in Plaintiff's testimony further assisted the ALJ in weighing the persuasiveness of Plaintiff's subjective complaints with the record medical evidence, thereby informing the ALJ's formulation of Plaintiff's RFC.

The Court finds the RFC is supported by substantial evidence.  The ALJ carefully considered evidence from medical providers and consultative examiners, including the FCE and Dr. Brown, as well as testimony from Plaintiff and Plaintiff's mother about Plaintiff's condition and abilities.  R. 25-34.  The ALJ concluded the evidence showed Plaintiff could perform sedentary work with additional limitations, including precluding Plaintiff from performing tasks requiring overhead reaching with his bilateral upper extremities.  R. 25.  The ALJ did not find Plaintiff could perform all ranges of work with *no* limitations.  Rather, the ALJ included several additional limitations that specifically related to evidence about Plaintiff's functional limitations.  The RFC limits Plaintiff's ability to sit, stand, and walk for long periods, provides weight restrictions, limits Plaintiff to occasionally balancing, stooping, kneeling, crouching, and climbing stairs or

ramps, and precludes any crawling or climbing ladders, ropes, or scaffolds. R. 25. The RFC further provides Plaintiff "cannot perform tasks that require reaching overhead with the bilateral upper extremities," precludes required exposure "to a high ambient noise environment louder than a moderate noise level," and prohibits required exposure "to unprotected heights or dangerous machinery." R. 25. There is substantial evidence supporting each of these limitations.

All in all, the RFC is consistent with the record evidence. While one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court. The Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59; Moore, 405 F.3d at 1211. The RFC here is supported by substantial evidence.

### B.     The ALJ Properly Relied on the Testimony of the VE

In an argument that dovetails with the now-discredited argument that the ALJ erred in formulating the RFC, Plaintiff contends the ALJ's reliance on the VE's testimony is not supported by substantial evidence. Plaintiff argues that because the hypothetical upon which the ALJ relied did not include the more restrictive limitations which, as discussed above, Plaintiff believes should have been incorporated into the RFC, the VE's testimony cannot support the ALJ's decision Plaintiff could perform sedentary work as an order clerk, charge account clerk, and a final assembler. (Pl.'s Br., pp. 12-15.) Specifically, Plaintiff asserts "nowhere" in the hypothetical questions presented to the VE "are facts that would address Plaintiff's numbness and lack of sensation in his hands." (Doc. no. 14, p. 1.)

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question [to the VE] that accounts for all of the claimant's impairments." Barchard v. Comm'r of Soc. Sec., 628 F. App'x 685, 687 (11th Cir. 2015) (*per curiam*) (citation omitted); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (same). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

As discussed above, the ALJ's decision to not incorporate into the RFC the more restrictive limitations regarding the numbness and weakness in Plaintiff's hands and fingers was supported by substantial evidence. Thus, the ALJ did not have to incorporate these restrictions into the hypotheticals presented to the VE. See Crawford, 363 F.3d at 1161.

The characteristics of the person in the hypothetical presented by the ALJ to the VE, and relied upon by the ALJ to conclude Plaintiff was not disabled, incorporated all the supported restrictions in Plaintiff's RFC, including limitations to: (1) lifting and carrying up to ten pounds occasionally and less than ten pounds frequently, (2) standing and walking up to two hours, and sitting at least six hours, during a work-day, (3) occasionally balancing, stooping, kneeling, and crouching but never crawling, (4) occasionally climbing ramps and stairs but never climbing ladders, ropes, or scaffolds, (5) never performing tasks requiring reaching overhead with Plaintiff's bilateral upper extremities, (6) no required exposure to a high ambient noise

14

environment louder than a moderate noise level, and (7) no required exposure to unprotected heights or dangerous machinery.  R. 25.  The ALJ included the limitation prohibiting overhead reach with upper bilateral extremities to "account for findings such as reduced 4/5 strength in the upper extremities."  R. 28.  The restrictions for which Plaintiff argues were not required to be included in the RFC, and thus the ALJ did not have to include those limitations in the hypothetical to make the disability determination.  See Borges v. Comm'r of Soc. Sec., 771 F. App'x 878, 883 (11th Cir. 2019) (*per curiam*).  In sum, because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics as determined by the ALJ in formulating the RFC, the ALJ's reliance on the VE testimony was proper.  See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

### IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 24th day of October, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA